28458. RELIANCE FERTILIZER COMPANY *v.* PERRY.

Decided November 14, 1940.

*M. W. Eason, John P. Rabun,* for plaintiff.

*Henry H. Durrence, S. T. Brewton,* for defendant.

FELTON, J.  Reliance Fertilizer Company sued G. E. Perry on a written dealer contract for the principal sum of $461.02, alleged to be due for fertilizers purchased by Perry from the company. Perry filed an answer which admitted the execution of the contract and the purchase of the fertilizers charged to him by the company, but denied that he had received the proper credits under the contract, and alleged that he had not received credit for corn which should have been credited on the contract price of the fertilizer. By amendment he alleged that there was sold some $500 worth of fertilizer for which he was due compensation at five per cent. The defendant admitted a prima facie case and assumed the burden of proof. At the conclusion of the evidence the jury returned a verdict for the defendant. The plaintiff excepted to the overruling of a motion for new trial.

1. The itemized statement attached to the petition showed that defendant was charged with 101.3 tons of fertilizer in the sum of $2954.69. Also in the itemized statement appeared certain credits, totaling $2493.67. Among these credits appear the following: "Discounts: cash tonnage gross (1330.01) 10%, $133.00.  Agent's compensation tonnage gross 5%, $66.50.  Agent's compensation tonnage gross 1%, $13.30." These allowances as shown by the itemized statement are on cash sales in the sum of $1330.01. It is contended by Perry that these credits should be $226.45, $113.23, and $22.65, respectively, of allowances on cash sales in the sum of $2264.50. Perry testified: "Prior to my receipt of this latter statement J. B. Boyd, on June 29, 1938, computed for me the amount owing on my account with the plaintiff, and I hereby identify the statement he made up for me at my home, as being this statement, dated June 29, 1938, signed by J. B. Boyd, and showing a net balance due in the amount of $454.39. This statement prepared by J. B. Boyd is correct except that it does not show any credit for farm deliveries, and I am entitled to credit in the amount of $74.48 for such deliveries, and it lacks $17.21 in crediting me with cash remittances I made to the plaintiff, nor does it show any credit for corn transactions I later will explain. . . I received the fertilizers as alleged in the plaintiff's petition, and speaking in terms of consumer's basis prices, I sold $1330.01 of that fertilizer

for cash and $540.16 on notes. I did not guarantee payment of those notes." The statement identified by the witness credited him with the sums contended for as discounts and compensation.

The contention of the defendant was that he was entitled to the compensation as set out in the statement made by Boyd, and that so far as that statement showed these amounts it was correct. Under the evidence introduced by the defendant we are unable to agree to this contention. The contract under which these sales were made provided that the agent would be allowed compensation on *cash* sales in a certain per cent., and a different per cent. on time sales where he guaranteed the payment of the notes of the customers. The defendant testified that of the fertilizers purchased by him from the company he sold $1330.01 for cash and $540.16 on notes. This does not account for the fertilizer the defendant admits that he got from the company. Since the case will be tried again, we will not undertake to show just what amount appears to be due by the defendant, because it will be a question for the jury to find what is due under the contract.

2. It is contended by the defendant that of the amount claimed to be due by the company $362.70 was paid by him to the company in corn, and that the corn was accepted by the company in full and final settlement of the account. With reference to the corn transaction Perry testified: "J. B. Boyd was at my house early in April, 1938, and he told me that I might take corn in payment for fertilizer. He said that there was a corn buyer in Glennville, W. S. Boyd Jr., a distant relative of his, and he and I came to Claxton and he called W. S. Boyd Jr., over the 'phone and told him to come to my place to buy some corn. J. B. Boyd paid for that 'phone call, and told me how much per bushel to allow for the corn. Within a day or two after that call, on April 8, 1938, W. S. Boyd sent a truck to my place and I delivered to his driver four hundred bushels of corn. The driver brought along a check for $240, already signed by W. S. Boyd Jr., and made out except as to the name of the payee, which check he delivered to me. This is the check, it being for $240, drawn on the Bank of Stapleton, Stapleton, Georgia, and dated April 8, 1938. J. B. Boyd came to my place while W. S. Boyd's truck was there, and I indorsed the check and gave it to him to be sent to Reliance Fertilizer Company. After several days J. B. Boyd brought back that check. It

538

had failed to clear the bank on which it was drawn. The next day W. S. Boyd Jr. sent his truck back to my place. I was not at home that day but my wife delivered to the truck driver 204½ bushels of corn, taking therefor check drawn by W. S. Boyd Jr. for $122.70. This is the check I hold in my hand, dated April 9, 1938, payable to my order and drawn on the Bank of Stapleton, Georgia. It was accepted by my wife, and she deposited it to my credit in the bank in Claxton. This check failed to clear the bank on which it was drawn. Of the six hundred four and one half bushels of corn I delivered to W. S. Boyd Jr., three hundred seven bushels were my own corn and the balance was corn I had taken in payment of fertilizers of Reliance Fertilizer Company. In delivering this corn to W. S. Boyd Jr., I was delivering it to the man J. B. Boyd had called to come and get it, and J. B. Boyd was the only representative of Reliance Fertilizer Company with whom I have dealt under the contract on which this suit is brought. J. B. Boyd and I later went to Stapleton to see if we could collect these two checks made by W. S. Boyd Jr. On April 27, 1938, I made the two affidavits that accusations might be made against W. S. Boyd Jr. . . J. B. Boyd was with me when I swore out these accusations. The solicitor advised that it made no difference who signed the accusations; so I signed them, since I lived near Claxton."

We do not think that under this evidence the jury was authorized to find that Boyd agreed to accept corn in payment for fertilizer. The second check for corn was made payable to the defendant, and by his wife deposited in the bank to his credit. There is no evidence that the defendant paid the proceeds of this check, or made any effort to pay the proceeds thereof, to the company. The defendant contends that he delivered the corn to the man called by the agent to come for it. He does not contend that the delivery of the corn to this man was delivery and acceptance by the company, nor does the evidence authorize such a finding. Instead, all that the evidence shows is that there was a sale of the corn by the defendant to the corn buyer; and the fact that this buyer was called or obtained by the agent of the company does not change the fact that the title to the corn was never put into the company, but that checks for the price thereof were accepted by the defendant, and in one instance the check was indorsed over to

the company, and in the other instance deposited to the credit of the defendant. Nowhere in the record does it appear just what benefit the company would have gotten from the second sale of corn, since the money, if the check had been paid, was deposited to the credit of the defendant. The defendant would not be entitled to credit for the corn for another reason. The contract provides: "The agent agrees to execute separate trust agreement covering each consigned shipment, and to sell the fertilizer consigned to him for cash only." It further provides: "No agent or employee of the company has the right to change the terms of this agreement in any respect, except an officer of the company at Savannah, Ga., and then only in writing, signed by him and the agent." It does not appear from the record that the attempted change in the terms of the original contract was done in accordance with this unambiguous provision of the original contract, and the authority of Boyd, with whom the agent dealt, to alter the terms of the contract is not shown. The verdict for the defendant was unauthorized by the evidence, and the court erred in overruling the motion for new trial.

*Judgment reversed. Stephens, P. J., and Sutton, J., concur.*